**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  19-692** |
| | : | |
| **STEVE MACK** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                          **September 17, 2020**

We are set to begin a jury trial on the grand jury's indictment of Steve Mack for possession with intent to distribute narcotics, possession of a firearm in furtherance of drug trafficking, and possession of a firearm and ammunition as a convicted felon.  The indictment arises from a September 9, 2019 visit from Pennsylvania parole agents to review Mr. Mack's residence where they claim to have found narcotics, a firearm, and ammunition.  The Commonwealth arrested Mr. Mack and placed him in custody in a Philadelphia jail.  He made phone calls from jail.  The United States moves to admit audio recordings and transcripts of six telephone calls between Steve Mack and others while incarcerated in the Philadelphia correctional facility.[1] The United States seeks to play audio recordings audio for the jury, accompanied by the transcripts, and simultaneously published to the jury, under Fed. R. Evid. 401. The United States contends the recordings are authentic under Fed. R. Evid. 901. Mr. Mack contests the authenticity of the recordings arguing they are truncated to not demonstrate the full conversation. We grant the United States' motion to admit audio recordings and transcripts after evaluating the credibility of witnesses and evidence adduced during an evidentiary hearing. The United States confirms it will not refer to the calls as originating from jail unless Mr. Mack opens the door as to his location during the trial.

## I.     Background

Our grand jury returned an indictment charging Steve Mack with possession of cocaine and cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count One); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm and ammunition as a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Counts Three and Four).  Before this indictment, Philadelphia Police arrested Mr. Mack on related state charges resulting in his incarceration at the Curran Fromhold Correctional Facility in Philadelphia.

While in custody from September 9, 2019 to December 3, 2019, Mr. Mack made approximately 150 telephone calls to other individuals.  Under the policy of the Philadelphia prison system, all telephone calls are recorded except those between an inmate and his attorney. The United States seeks to admit at trial the audio recordings and transcripts of six prison calls made by Mr. Mack to other individuals on September 13, September 23, September 26, and September 27, 2019; November 4, 2019; and December 1, 2019.

Mr. Mack, appearing *pro se*, did not oppose in writing the United States' motion to admit the audio recordings and transcript but objected to the admission of the audio recordings and transcripts at an evidentiary hearing held at our final pre-trial conference with the parties. Mr. Mack objects to the authenticity of the audio recordings.  He concedes he listened to the recordings but argues the recordings "could be made up" and contends some recordings are discontinued in parts, stop and start without capturing the full conversation, and contain deletions of conversations.

## II.    Analysis

In *United States v. Starks*, our Court of Appeals imposed on the United States the burden "to produce clear and convincing evidence of authenticity and accuracy as a foundation for the

admission of [audio] recordings . . ..”[2] The court provided seven factors to authenticate audio recordings: “A review of the authorities leads to the conclusion that, before a sound recording is admitted into evidence, a foundation must be established by showing the following facts: (1) [t]he recording device was capable of taking the conversation now offered in evidence. (2) [t]he operator of the device was competent to operate the device. (3) [t]he recording is authentic and correct. (4) [c]hanges, additions or deletions have not been made in the recording. (5) [t]he recording had been preserved in a manner that is shown to the court. (6) [t]he speakers are identified. (7) [t]he conversation elicited was made voluntarily and in good faith, without any kind of inducement.”[3]

We held a *Starks* hearing on September 16, 2020. The United States offered the testimony of Brad Cakrane, the Systems Administrator of the Philadelphia Prison System. Mr. Cakrane has been employed in his position for eight years and is responsible for maintaining the prison call monitoring system. He testified all telephone calls made by inmates are recorded with the exception of calls made to attorneys; all inmates are assigned specific “PP” or “PID” number for telephone calls; inmates must enter their PP or PID number plus a three-digit PIN before making a call; all calls are recorded and saved on a Command Dell system; and identified Mr. Mack’s PP number as 977014.

In response to the subpoena served upon him by the United States Attorney, Mr. Cakrane searched the prison system’s database by inputting Mr. Mack’s PP number 977014 and the requested date range (September 9, 2019 to December 3, 2019).  Mr. Cakrane downloaded the results of his search onto a disk and marked the outside of the disk with his initials, Mr. Mack’s PP number, and the date range of calls. Mr. Cakrane authenticated the disk as made by him marked as Government Exhibit 1.  Mr. Cakrane testified he did not alter the calls in any way and the calls downloaded on to the disk are a complete and accurate replica.  Mr. Cakrane testified Government

Exhibit 1A is a screen shot of all of Mr. Mack's calls including his PP number and name, the date of the call, the duration of the call, and the phone number called.  Mr. Cakrane testified he did not change any information or data collected and downloaded on to the disk at Government Exhibit 1. Mr. Cakrane testified only his supervisor and a co-worker have access to the prison call monitoring system and recorded calls cannot be manipulated, edited, added to, or deleted.

The United States offered the testimony of ATF Special Agent Jason Santo. Agent Santo testified he heard Mr. Mack speak at our August 20, 2020 suppression hearing and confirmed Mr. Mack's voice on the audio recordings. Agent Santo testified there are approximately 150 calls on the disk prepared by Mr. Cakrane and for the "most part" listened to all calls. Agent Santo testified he made no alterations to the recordings and he recognized the voice on the recorded calls as Steve Mack.  Agent Santo transcribed portions of each of the six calls which the United States will introduce as its evidence at trial. Agent Santo testified he listened and transcribed the six calls at issue at Government Exhibits 21 and 21T (transcript); 22 and 22T; 23 and 23T; 24 and 24T; 25 and 25T; and 26 and 26T and did not delete, omit, add, or change the audio files.  Agent Santo testified he transcribed everything able to be transcribed and, where he could not hear or determine the words, used "inaudible" in the transcript.

The United States played the audio of Exhibits 21 and 22 for the Court. Counsel for the United States represented it produced the full audio recordings to Mr. Mack. At the close of its evidence, the United States moved for the admission of the audio recordings and transcript with the certification of Mr. Cakrane.

Mr. Mack elected not to cross-examine either Mr. Cakrane or Agent Santo on the authenticity of the recordings.  Mr. Mack did not dispute the voice on the recorded calls is his voice. Mr. Mack instead argued the recordings should not be admitted because they are not

relevant, make no reference to 133 North Paxon Street where parole agents visited him on September 9, 2019 giving rise to the federal charges, make no reference to the evidence found at 133 North Paxon Street on September 9, 2019, and do not incriminate him.

Based on the evidence adduced we find the United States produced clear and convincing evidence of the authenticity and accuracy of the audio recordings under the *Starks* factors. Mr. Cakrane's testimony demonstrates the prison's call monitoring system is capable of recording Mr. Mack's phone calls; as the system administrator of the phone monitoring system, he is competent to operate the recording system; the recordings are authentic and correct; no changes, additions or deletions were made to the recordings; and Mr. Cakrane explained to the Court the preservation of the calls. Agent Santo identified Mr. Mack's voice and testified he made no alterations to the recorded calls. Mr. Mack does not deny the voice on the recordings is his. We have no argument, nor basis to find, Mr. Mack voluntarily made these calls without inducement.

We grant the United States' Motion.  The United States represented it will not refer to the calls a "jail calls," referring to them as "recorded calls."  We admit the United States' exhibits subject to Mr. Mack's cross-examination.

---

[1] ECF Doc. No. 61.

[2] 515 F.2d 112, 121 (3d Cir. 1975) (citation omitted).

[3] *Id.* at n. 11. In its motion, but not at the *Starks* hearing, the United States argued *Starks* is no longer good law having been decided before adoption of the Federal Rules of Evidence. It argues the higher burden for admission by "clear and convincing" evidence under *Starks* is no longer applicable under Federal Rule of Evidence 901 requiring "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Our Court of Appeals has not overruled *Starks* and continues to apply the *Starks* factors to the admission of audio recordings. *See e.g. United States v. Credico*, 718 F. App'x 116, 119-21 (3d Cir. 2017) (applying *Starks* to the district court's admission of cassette tape recordings of defendant's threatening voicemails);

*United States v. Toler*, 444 F. App'x 561, 564, n. 1 (3d Cir. 2011) (applying *Starks* and recognizing the United States' argument Rule 901(a) abrogated *Starks* but finding because the United States met the higher "clear and convincing evidence" standard, "we need not comment on the relationship between *Starks* and Rule 901."). In a non-precedential opinion as recently as 2018, our Court of Appeals applied the *Starks* standard and factors to the admission of recordings. *See Flood v. Schaeffer*, 754 F. App'x 130, 133-34 (3d Cir. 2018). In another decision, our Court of Appeals questioned whether *Starks* "remains relevant after the enactment of Fed. R. Evid. 901" but, in that case, did not decide the issue because the defendant waived a *Starks* hearing. *United States v. Tahn Le*, 542 F. App'x 108, 117, n.8 (3d Cir. 2013). Decisions in this District "read *Starks* and Rule 901 together to require the Government to identify a speaker on a recording by a preponderance of the evidence standard." *United States. v. Estevez*, No. 13-cr-20, 2013 WL 3196421, at *2 (E.D. Pa. June 25, 2013) (citing *United States v. Savage*, No. 07–cr-550–03, 2013 U.S. Dist. LEXIS 14327, *11-*15 (E.D. Pa. Feb. 4, 2013).